**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SHARON M. PHILLIPS,**

          **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:04-cv-1430-Orl-DAB**

**CERTAIN UNDERWRITERS AT**
**LLOYD'S LONDON, GALLAGHER**
**BASSETT SERVICES, INC.,**

          **Defendants.**
_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration following a bench trial on stipulated facts. As set forth in the Joint Final Pretrial Statement (Doc. No. 30), this is a claim for breach of an insurance contract under Florida law, arising from an occupational disability policy (herein "the Policy") taken out by Plaintiff. The action was initially filed in state court and removed to this Court, on the basis of diversity jurisdiction. Following removal, the parties consented to the jurisdiction of the undersigned magistrate judge. The parties have settled the majority of the dispute at mediation, waived their demand for a jury trial and presented three remaining issues to the Court for resolution. The parties filed briefs and their evidence, and the Court has heard argument. Based on the record and the applicable law, the Court makes the following findings of fact[1] and conclusions of law.

---

[1] The facts are based on the stipulated facts contained in the Joint Final Pretrial Statement, and as set forth at trial.

## *FINDINGS OF FACT*

1. Plaintiff sustained a knee injury while in training as a contractual worker with CDS Airfreight, Inc. on September 2, 2003. As Plaintiff was in training, she was being paid a salary of $350.00 per week, after which she was to be paid on a commission basis, less expenses. Plaintiff secured at her own expense an insurance policy, underwritten by Defendants, providing occupational disability and medical insurance coverage. Plaintiff made a claim under the Policy, with respect to this injury, on September 16, 2003, and the Defendants began providing medical and indemnity benefits to her.

2. Following the injury, Plaintiff was authorized by Defendant to see orthopaedist Ramy Hanna, M.D. for treatment. At trial, Plaintiff represented that Dr. Hanna had an outstanding bill of $150.00 for treatment authorized by Defendants, but never paid.

3. On February 4, 2004, Plaintiff filed a worker's compensation claim, on the theory that she was an employee and not an independent contractor during the training period. The Policy contains a provision that: "no benefits shall be payable under this policy for any loss for which the injured person claims coverage for worker's compensation . . ." Thus, Defendants suspended benefits under the Policy.

4. On May 18, 2004, during the pendency of the worker's compensation claim, Plaintiff obtained an independent medical examination ( the "IME") by Dr. Robert Murrah, at a cost billed to Plaintiff of $600.00. This cost was not reimbursed by Defendants.

5. The Judge of Compensation Claims determined that Plaintiff was not an employee, but an independent contractor and denied compensation benefits, by order dated September 9, 2004. Plaintiff

filed this lawsuit in state court that same day.  At trial, counsel for Plaintiff acknowledged that no pre-suit notice or demand was made on Defendants after the worker's compensation order was entered.

6.  According to the stipulated facts, Defendants re-instituted indemnity benefits, paying Plaintiff $546.00 on September 17, 2004, representing indemnity from February 3, 2004 through March 1, 2004, and sent Plaintiff claim forms relating to the time period of March 2, 2004, forward. Indemnity was then brought up to date with a payment of $5,460.00 on December 1, 2004.  Pursuant to the terms of the mediation agreement, Defendants adjusted the compensation rate from $136.50 to $170.62, retroactive to the beginning of the claim.

7.  Dr. Murrah was authorized as Plaintiff's new treating physician under the Policy, and Defendants have paid for Plaintiff's treatment, with the exception of the May 18, 2004 IME charge, and, as alleged at trial, the remaining $150.00 charge billed by Dr. Hanna.

### *ISSUES AND ANALYSIS*

The parties acknowledge that Defendants are current with indemnity payments.  Plaintiff contends, however, that she is entitled to additional compensation.  Specifically, Plaintiff claims[2] entitlement to:

1.  Interest on past due indemnity at the rate of ten percent per annum on $34.12 week, adjusted over 72 weeks;

2.  Interest on the past due bill from Dr. Hanna, at the rate of 12% per annum;

3.  Bill for IME evaluation by Dr. Murrah: $600.00;

4.  Interest on the bill for Dr. Murrah, at the rate of 12% per annum; and

---

[2] The Court takes the claim from the Money Damages Claimed by Plaintiff section of the Joint Final Pretrial Statement, Doc. No. 30 at 5-6.

5. attorney fees and costs, in an unspecified amount.

At trial, Plaintiff also sought reimbursement to Dr. Hanna of the unpaid $150.00.

The Court **grants, in part, and denies, in part** the claim, as follows.

*The Unpaid Doctor Bills*

With respect to Dr. Hanna, Defendants contended at trial that they were unaware of any claim properly filed for the $150.00 alleged to be owing to Dr. Hanna, for work authorized by Defendants, but not paid. There is conflicting evidence as to whether the claim was properly submitted to Defendants.[3] Regardless, as Defendants acknowledge that they are responsible for authorized claims, and they do not appear to dispute the legitimacy of the charge (as opposed to whether it was properly submitted on the appropriate form to Defendants), the bill should be paid.

With respect to Dr. Murrah, Defendants contend that even though the policy provides for a "second opinion for surgery," in this case, Dr. Murrah was retained to provide evidence for the worker's compensation claim, during the period of time that the policy benefits were suspended. Thus, they contend Dr. Murrah's evaluation and charge was not a second opinion covered by the Policy, but an IME necessary for prosecution of a worker's compensation claim and, as such is without the Policy.

The Policy provides as an "Eligible Expense:"

**Doctor's Fees**: Charges by a doctor for medical treatment. Doctor's calls while the Insured Person is Hospital confined are limited to one call a day for one Doctor. Charge for one second opinion for surgery is covered.

---

[3]*Compare* Deposition of Brenda Cullinan (Doc. No. 42) with Deposition of Dr. Hanna's employees (Doc. No. 41).

Doc. No. 42, Exhibit 1 at 7.[4]

Defendants argue that Dr. Murrah's opinion is not a second opinion for surgery, as Plaintiff did not receive a first opinion recommending surgery from her initial physician, Dr. Hanna. Under Defendant's interpretation, the word "for" in "for surgery" means "in favor of" surgery. Thus, the only time the company will pay for a second opinion is after a Plaintiff has already received a first opinion *in favor of* surgery. Defendants cite no authority for this interpretation, and the Court finds that it is inconsistent with the generally accepted, common-sense meaning of the phrase "second opinion for surgery;" that is, an evaluation from another physician with respect to whether one should *or should not* have surgery. The Policy provides, in essence, that an insured is entitled to a second opinion *regarding* surgery.[5] Since the first physician did opine regarding surgery, (in this case, that the injury would heal on its own), Plaintiff was entitled, under the Policy, to seek a second opinion. Defendants' interpretation that an insured is entitled to two opinions, but only if the first favors surgery would impermissibly make compensation of the doctor's fee contingent on the content of a different doctor's opinion.[6] To the extent the Policy is ambiguous, the Court follows the well-settled rule that any ambiguity in an insurance contract is to be construed against the drafter. *Key v. Allstate*

---

[4] Note, too, similar language contained in the Policy: "Up to one call a day for one Doctor, while the Insured Person is in the Hospital. Charges for a second opinion for surgery are included." (Doc. No. 42, Exhibit 1, page 6).

[5] In a different context, the Supreme Court has noted the practice of obtaining a second opinion "in order to ensure sound medical judgments." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 384, 122 S.Ct. 2151, 216, 153 L.Ed 2d 375 (2002).

[6] Indeed, under the Defendants' interpretation, if Dr. X favored surgery, but Dr. Y did not, both Dr. X and Dr. Y would be compensated under the Policy *only* if Dr. Y was consulted *after* Dr. X was. If Dr. Y was consulted first, Dr. X would not be entitled to any compensation. The unfairness to the insured is readily apparent.

-5-

*Ins. Co.,* 90 F.3d 1546, 1549 (11th Cir. 1996) ("Thus, ambiguities in insurance contracts generally are construed in favor of providing coverage"). The $600 charge is covered by the Policy.

### *Interest on the Unpaid Bills and Indemnity Payments*

Plaintiff seeks interest on the unpaid doctor's bills, plus the belated indemnity payments held in abeyance due to the pending worker's compensation claim. The Court finds that Plaintiff is not entitled to interest on the doctor's bills but is entitled to interest on the indemnity payments.

Pursuant to Florida Statutes § 627.613, insurers are bound to reimburse all claims within a particular time period following receipt of the claim by the company. All overdue payments shall bear simple interest at the rate of 10% per year. Fla. Stat. § 627.613(6).

As for Dr. Hanna's bill, it was argued at trial that, save for Dr. Murrah's IME, all claims properly submitted to the insurer were paid and this bill was not paid because it was not received by the insurer. Obviously, if the claim was not tendered, it cannot be overdue. Even if it was properly submitted and overdue, however, Plaintiff has failed to establish that *she* is entitled to an award of interest, as the bill represents money owed to the health care providers, and not to her. *See Schuster v. Blue Cross and Blue Shield of Florida, Inc.,* 843 So. 2d 909 (Fla. 4th DCA 2003) (insureds were not entitled to interest on unpaid medical insurance claims because insureds had assigned the claims to their health care providers and it was the providers, and not the insureds, who lost the use of their money for a time.) Thus, no interest is due Plaintiff on the unpaid bills of Drs. Hanna and Murrah.

A more difficult question is presented with respect to interest on the disability payments, held in abeyance due to the worker's compensation claim, and then eventually adjusted upward due to agreement at mediation. Plaintiff seeks interest on the past due indemnity ($34.12 a week) at the rate of 10% for 72 weeks. Defendants object, presumably on principle, relying upon the previously cited

provision of the Policy that "no benefits shall be payable under this policy for any loss for which the injured person claims coverage for worker's compensation . . . ." As argued by Defendants, the Policy suspends any and all entitlement to benefits, should an injured person pursue a worker's compensation claim, and thus, no benefits were due during that period. If the benefits were not due, it follows that they could not be overdue, and thus, interest is not awardable.

At the heart of the matter is a determination of who should bear the risk of nonpayment of benefits during the pendency of a worker's compensation claim. The contract language itself is ambiguous. Although the Policy has been interpreted by the parties as suspending benefits during the pendency of a worker's compensation claim, those words are not included in the Policy language. Instead, the language provides that no benefits are *payable* for any loss for which the injured person *claims* coverage for worker's compensation. On its face, this appears to provide a Plaintiff with an unconscionable choice: either accept the benefits of the Policy you paid for and waive your statutory rights to pursue a worker's compensation claim against your employer, or pursue your compensation claim and waive your rights to indemnity payments under the Policy, even if you lose your claim. Perhaps recognizing that such an interpretation is unseemly, Defendants appear to have interpreted the clause as merely providing for a suspension of benefits, during the pendency of the claim. As pointed out by Plaintiff, however, to the extent this suspension does not include the payment of interest on the accrued benefits, if the worker's compensation claim is ultimately unsuccessful, the provision should not be enforced.

The Policy contains a provision that "any provision of the Master Policy or this document which, in its effective date, is in conflict with the statutes of the state in which it is issued is hereby amended to conform to the minimum requirements of such statutes." (Policy at page 18). To the

extent the Policy does not provide for interest on payments withheld during the suspension period, it is inconsistent with Fla. Stat. § 627.613(6). As such, the court interprets the Policy, consistent with its terms, to "conform to the minimum requirements" of Section 627.613(6), and allow for payment of interest on the adjusted accrued benefits.[7] The Court is unclear as to the proper amount of interest to be awarded consistent with the above and will afford the parties the opportunity to make final submissions on this issue.

### *Attorney's Fees and Costs*

Florida Statute § 627.428(1) provides, as follows:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

This court has previously found that § 627.428 was enacted to "protect the insured, not to benefit his attorney, however capable, and to restore an insured insofar as practicable to the same position he would have been in if his claim for coverage had been granted without litigation." *Maltzer v. Provident Life and Acc. Ins. Co.*, 843 F. Supp. 692, 700 (M.D. Fla. 1993). The Eleventh Circuit has interpreted this statute, indicating that an award of attorney fees to a prevailing insured upon rendition of a judgment against insurer is not part of the costs and collateral to the main claim but, rather, is an integral part of the merits of the case and part of the plaintiff's damages. *Certain British*

---

[7] From a practical point of view, Defendants interpretation would further serve to discourage injured workers from pursuing a worker's compensation claim; a result that makes no sense whatsoever, considering that the Policy includes a right to recover benefits paid to the insured under the Policy which are subsequently recovered under worker's compensation, and Defendant is not the employer's insurer for worker's compensation purposes.

*Underwriters at Lloyds of London, England v. Jet Charter Service, Inc.*, 739 F.2d 534 (11th Cir. 1984). Moreover, an attorney who requests a court awarded fee under this statute has the burden of proving his entitlement to the fee. *United Services Auto. Ass'n v. Kiibler*, 364 So.2d 57, 59 (Fla. 3rd DCA 1978).

Here, the parties dispute the issue of entitlement, and no evidence was presented with respect to the amount of any such award. As such, although the Court can and will resolve the issue of entitlement, it nonetheless cannot award a reasonable fee at this juncture, based on the record presented.

As for entitlement, the statutory language is clear: in the event of judgment against the insured (which will be had here, albeit in a modest amount), an attorney's fee *shall* be awarded. Defendants urge the Court to find an exception here, as Plaintiff did not give Defendants pre-suit notice of the claim and an opportunity to reinstate benefits, at the conclusion of the worker's compensation claim. While it is true that attorney's fees have been denied in cases where it was found that no denial of the claim had yet occurred, or there was no necessity to institute suit,[8] the facts here do not support such an exception. As argued by Plaintiff at trial, this is not a case where Defendants paid all indemnity and medical benefits due promptly upon being served with the Complaint. Rather, Defendants removed the case to this court and proceeded to litigate at least part of the claim through mediation and trial. Under these circumstances, the claim was, in part, denied by the Defendant's actions in continuing the litigation.

---

[8]*See, e.g., Garcia v. Lumbermens Mutual Insurance Company,* 246 So. 2d 574 (Fla. 3rd DCA 1971); *Geico v. Battaglia,* 503 So. 2d 358 (Fla. 5th DCA 1987).

As for amount, as noted above, Plaintiff has failed to introduce evidence as to a reasonable fee to be awarded. Thus, the Court grants entitlement, but directs the parties to confer regarding a stipulated amount, if possible, to be included in the final judgment in this matter, and to file a notice reflecting the amount within 14 days of this Order. The Court advises that the amount should take into consideration the rather limited recovery had by the Plaintiff, as well as the modest scope of the contested issues. The Court's inclination is to award only a modest fee.

To the extent the parties cannot agree on an amount, Plaintiff may file a motion, supported by affidavits or such evidence as Plaintiff wishes to be considered, within 14 days of this Order. Defendant may file a response within 11 days thereafter. The parties should proceed in similar fashion with respect to the calculation of interest. Upon resolution of the outstanding interest and attorney's fee issues, the Court will direct the Clerk to enter final judgment in favor of Plaintiff, consistent with the above.

**DONE** and **ORDERED** in Orlando, Florida on October 21, 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record